Frank BRANDON, Plaintiff,

v.

The CITY OF NEW YORK, P.O. Said Salim, Shield No. 09517, Individually and in his Official Capacity, P.O. Andro Stambuk, Shield No. 28510, Individually and in his Official Capacity, P.O. Marc Klausner, Shield No. 01983, Individually and in his Official Capacity, P.O.S "John Doe" # 1–10, Individually and in their Official Capacities, (the name John Doe being fictitious, as the true names are presently unknown), Defendants.

No. 07 Civ. 8789(LAP).

United States District Court, S.D. New York.

March 30, 2010.

Jon Louis Norinsberg, Law Offices of Jon L. Norinsberg, New York, NY, for Plaintiff.

Steve Stavridis, New York City Law Department, New York, NY, for Defendants.

*MEMORANDUM & ORDER*

LORETTA A. PRESKA, Chief Judge:

Plaintiff Frank Brandon ("Brandon" or "Plaintiff") brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 alleging that Defendants the City of New York, New York Police Officer Said Salim ("Salim"), New York Police Officer Andro Stambuk ("Stambuk"), New York Police Officer Marc Klausner ("Klausner"), and other unidentified police officers (collectively, "Defendants") violated Brandon's civil rights during his arrest and subsequent prosecution for possession of crack cocaine. Specifically, Brandon alleges that he was: (1) deprived of his federal civil rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments; (2) falsely arrested; (3) unlawfully strip searched; (4) maliciously prosecuted; (5) subjected to the malicious abuse of process; (6) deprived of his constitutional right to a fair trial; and (7) subjected to the aforementioned due to the unconstitutional policies and procedures of the City of New York. Defendants now move pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings as to Brandon's claims that he was unlawfully strip searched and deprived of his federal civil rights and move pursuant to Rule 56 for summary judgment as to the remaining claims. For the reasons set forth herein, Defendants' motion is granted in part and denied in part.

## I. BACKGROUND [1]

The parties give differing accounts of the events leading up to Brandon's arrest and subsequent prosecution. Because of these differences, each side's version is set forth below.

### A. Brandon's Version

On September 3, 2006 at approximately 2:40 a.m., Brandon left his apartment and walked to the corner store located at 132nd Street and 7th Avenue to purchase diapers and cigarettes. (Stavridis Decl., Ex. D ("Brandon Dep.") at 43:9–12, 46:22–47:2.) On his way to the store, he saw three acquaintances of his on the corner of 131st Street and stopped to talk to them. (Id. at 51:5–17.) After greeting them and briefly speaking with them, the three of them "walked off" northbound on 7th Avenue toward the bodega, and Brandon walked behind them toward the bodega on the corner of 132nd Street and 7th Avenue. (Id. at 54:20–55:20.) At this point, an unmarked car drove up alongside Brandon and the other three individuals. The officers exited the car and one of them said "hey, how you guys doing?" (Id. at 55:22.) Brandon walked by the three individuals and continued on to the bodega. One of the officers said "hey," and when Brandon turned around he was "football-tackled," searched while on the ground and cuffed. (Id. at 56:1–9.) Brandon was brought to his feet, and at this point, Salim approached him with a bag of narcotics (which were later identified to be crack cocaine) and said that the narcotics were Brandon's. (Id. at 71:5–7.)

### B. Salim's Version

On September 3, 2006, Defendant Salim, along with Defendants Stambuk and Klausner, were finishing their shift when they encountered Brandon and three other individuals. (Stavridis Decl., Ex. E ("Hearing Tr.") at 19:6, 20:8–14.) According to Salim, while driving southbound on Seventh Avenue, he observed a female walking about forty feet in front of the four males, all of whom were walking northbound on Seventh Avenue. (Id. at 20:21–22.) Salim heard screaming and noticed one of the males grabbing the front of his waistband and the female repeatedly looking back at the group and "picking up her pace." (Id. at 20:15–21:1.) Based on his experience, Salim thought that the individual who was grabbing at his waistband had a firearm. (Id. at 24:14–19.) Salim drove past the group, parked the car, and the three officers exited the vehicle. (Id. at 21:20–23.) Salim was walking behind the group headed northbound on Seventh Avenue while Stambuk and Klausner were in front of the group walking southbound. (Id. at 21:23–22:9.) As he approached the group, Salim observed Brandon take three steps back and throw an object to the ground against the wall on his left side. (Id. at 22:10–14.) Salim, who never lost sight of the object, picked it up, recognized that it was crack cocaine, and motioned to his partner that Brandon was a "Charlie," a code word which meant that Brandon should be arrested. (Id. at 23:6–12.) Salim continued to walk toward the group, and at that time, Stambuk tackled Brandon. (Norinsberg Decl., Ex. B ("Salim Dep.") at 45:21–25.)

---

**1.** The following facts are derived from the following sources: the Complaint ("Compl."); Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1"); Declaration of Steve Stavridis in Support of Defendants' Motion for Summary Judgment ("Stavridis Decl.") and the accompanying exhibits; Plaintiff's Local Rule 56.1(b) Statement ("Pl. 56.1"); Plaintiff's Response to Defendants' Local Rule 56.1(b) Statement ("Pl. 56.1 Resp."); and the Declaration of Jon L. Norinsberg ("Norinsberg Decl.") and the accompanying exhibits.

### C. Stambuk's and Klausner's Versions

Defendant Klausner's version of Brandon's arrest differed from that of Salim's version. According to Klausner, Salim stopped the car and told Klausner and Stambuk "that guy right there, that guy." (Hearing Tr. at 190:7–17.) Klausner walked toward the group and noticed Brandon who stepped back from the other three, and after the three other individuals stopped walking, he saw Brandon walk with a quicker pace northbound on Seventh Avenue. (Id. at 191:17–192:4.) Klausner testified that after Brandon had separated himself from the group, Klausner observed that Brandon had his hand in his waistband and did not show the officers his hands even after Stambuk ordered him to show them his hands. (Id. at 193:7–14.) Klausner never observed the defendant drop anything on the ground nor did he frisk any of the four individuals. (Id. at 193:18–23.)

According to Officer Stambuk, after the officers exited the vehicle, he noticed Brandon walking behind the group and saw that his hand was in his waistband. (Id. at 212:7–22.) Stambuk testified that he started watching Brandon as soon as he separated from the group and that he never saw Brandon drop, throw, or toss anything. (Id. at 222:8–24.) Stambuk repeatedly asked to see Brandon's hands, and when Brandon did not show Stambuk his hands, he tackled him. (Id. at 212:24–213:4.) Stambuk testified that Salim never identified which of the four individuals prompted him to stop the car. (Id. at 214:2–8.) In addition, none of the officers searched the other three individuals after Brandon's arrest. (Id. at 214:1–22.) Finally, Stambuk testified that he did not observe any of the other individuals grabbing his waistband, nor did he remember seeing a female walking forty feet ahead of the four men. (Id. at 221:3–16.)

### D. Criminal Proceedings

Brandon was arrested and processed on September 3, 2006. The arrest paperwork and criminal court complaint were completed by Salim. (Def. 56.1 ¶ 12) Brandon was indicted on October 27, 2006 on one count of Criminal Possession of a Controlled Substance in the Fifth Degree. (Stavridis Decl., Ex. C at 18.) Both Plaintiff and Salim testified at the Grand Jury proceedings. (Def. 56.1 ¶ 20; Norinsberg Decl., Ex. I.) On December 16, 2006, Brandon moved for an order to inspect the grand jury minutes and, upon inspection, for an order dismissing the indictment on the basis that there was insufficient evidence to support the indictment. (Def. 56.1 ¶ 21.) By order dated January 17, 2007, Justice Gregory Carro granted the motion to inspect the grand jury minutes and upon such inspection found that the evidence presented to the grand jury was legally sufficient to support the indictment and also granted Brandon's request for an evidentiary hearing. (Id. ¶ 22.)

On February 28, 2007 an evidentiary hearing was held before Justice Roger Hayes. (Stavridis Decl., Ex. C at 18.) At the hearing, the People presented three witnesses: Salim, Klausner, and Stambuk; and Brandon presented two witnesses: Tameka Elmore (Brandon's girlfriend) and Frank Brandon, Sr. (Id.) Upon the conclusion of testimony, Assistant District Attorney Adrian Rosales requested that the court grant Brandon's motion to suppress the crack cocaine recovered at the scene of the arrest because the "People [did] not believe that [they had] met their burden of going forward in this case." (Hearing Tr. at 237:4–6.) Justice Hayes agrees with ADA Rosales and stated that "It is clear you are not saying that you disbelieve any one or more of your witnesses but that you have a certain burden and that in your evaluation, you said, the three witnesses

that were called, [you have] made the critical legal judgment ... that you [could not] meet your burden ...." (*Id.* at 238:7–17.) On April 24, 2007, the District Attorney's Office formally recommended dismissal noting that "Salim's version of events leading to the arrest of the defendant was later contradicted by the testimony of his fellow officers, clearly making officer Salim's version of events implausible." (Norinsberg Decl., Ex. G.)

## II. DISCUSSION

### A. *Legal Standards*

#### i. *Rule 12(c) Standard*

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.2006).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557, 127 S.Ct. 1955.

In *Iqbal*, the Supreme Court set forth a "two-pronged" approach for analyzing a motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. First, a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences from those allegations in plaintiff's favor. *Id.* at 1949–50. The court may then proceed to identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Once the court has stripped away the conclusory allegations, it must determine whether the complaint's "well-pleaded factual allegations ... plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Evaluating the plausibility of a plaintiff's claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

#### ii. *Summary Judgment Standard*

Defendants are entitled to summary judgment only "'if the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [defendants are] entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Overton v. N.Y. State Div. of Military and Naval Affairs*, 373 F.3d 83, 89 (2d Cir.2004).

In assessing whether summary judgment is proper, the Court construes the evidence in the light most favorable to the non-moving party. *Lucente v. IBM Corp.*, 310 F.3d 243, 253 (2d Cir.2002). The moving party bears the initial burden of providing the basis for the motion and of identifying the evidentiary materials, if any, supporting the moving party's position. *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 559 (2d Cir.1997). The non-moving party must then " 'come forward with specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). Mere speculation and conjecture will not suffice. *See Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir.2003).

### B. *Analysis*

#### i. *Deprivation of Federal Civil Rights and Unlawful Search Claims*

Defendants move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as to Brandon's claims that he was deprived of his federal civil rights and that he was unlawfully strip searched. In his brief, Brandon did not raise any arguments opposing Defendants' motion regarding these two claims. Accordingly, the Court deems Brandon's first and third claims abandoned. *See, e.g., Bonilla v. Smithfield Assoc. LLC*, 09 Civ. 1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (dismissing plaintiff's claims as abandoned by failing to address them in his opposition motion to defendant's motion to dismiss all claims); *Thomas v. Atl. Express Corp.*, 07 Civ.1978, 2009 WL 856993, at *2 (S.D.N.Y. Mar. 31, 2009) ("[Defendant] has moved to dismiss [plaintiff's] due process and breach of contract claims. In his opposition, [plaintiff] failed to respond to [defendant]'s argument that his due process claim should be dismissed, and therefore that claim is deemed abandoned."); *Burchette v. Abercrombie & Fitch Stores, Inc.*, 08 Civ. 8786, 2009 WL 856682, at *9 (S.D.N.Y. Mar. 30, 2009) (dismissing plaintiff's constructive discharge claim because plaintiff abandoned it by failing to address it in her opposition motion to defendant's motion to dismiss all claims); *Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03 Civ. 6614, 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28, 2006) (finding claim abandoned by virtue of plaintiff's failure to address it in opposition to defendant's summary judgment motion on the claim); *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed."); *Anti–Monopoly, Inc. v. Hasbro, Inc.*, 958 F.Supp. 895, 907 n. 11 (S.D.N.Y.) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue .... which provides an independent basis for dismissal."), *aff'd*, 130 F.3d 1101 (2d Cir.1997), *cert. denied*, 525 U.S. 813, 119 S.Ct. 48, 142 L.Ed.2d 37 (1998).

Even if the claims were not deemed abandoned, however, the Complaint is wholly devoid of factual allegations and does not set forth a plausible cause of action. Brandon's claim that he was deprived of his federal civil rights is indistinguishable from his other, more specific claims of malicious prosecution, false arrest, and malicious abuse of process. This catchall claim alleges generally that Defendants deprived Brandon of "the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution" in violation of 42 U.S.C. § 1983. (Compl. ¶ 30.) Such general allegations, without supporting facts other than a clause incorporating an entire complaint by reference, are in-

sufficient to withstand even a motion to dismiss because they do not give " 'fair notice of what the claim is and the grounds upon which it rests.' " *Sforza v. City of New York,* No. 07 CV 6122, 2009 WL 857496, at *12 (S.D.N.Y. March 31, 2009) (quoting *Leibowitz v. Cornell University,* 445 F.3d 586, 591 (2d Cir.2006)). Moreover, Brandon's conclusory allegation that he was "subjected to an illegal and improper strip-search" appears at the end of the Complaint and is not supported by any of the factual allegations in the Complaint. (Compl. ¶ 39.) In fact, Brandon alleges that after he was tackled he was unlawfully searched for narcotics and other contraband, but he makes no factual allegations concerning a strip search. Such a conclusory allegation fails to put the Defendants on notice and does not contain sufficient "factual content that allows the court to draw the reasonable inference that the [Defendants are] liable for the misconduct alleged." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

### ii. *False Arrest*

Brandon may bring an action for false arrest under state tort law or pursuant to 42 U.S.C. § 1983 based on unreasonable seizure in violation of the Fourth Amendment. The elements of the state and federal claims are substantially the same. *See Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996); *Savino v. City of New York,* 331 F.3d 63, 75 (2d Cir.2003). Under New York law, the elements of a false imprisonment or false arrest claim are: (1) defendant's intentional confinement of the plaintiff; (2) plaintiff's consciousness of the confinement; (3) an absence of consent to the confinement; and (4) an absence of the confinement being "otherwise privileged." *See Singer v. Fulton Co. Sheriff,* 63 F.3d 110, 118 (2d Cir.1995); *Broughton v. State,* 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975); *see also Wallace v.*

*Kato,* 549 U.S. 384, 388–89, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).

The issue in this case for Brandon's false arrest claim and his malicious prosecution claim (*see infra* Part II.B.iii) is "the presence, or absence, of probable cause for both the arrest and subsequent prosecution of" Brandon. *Boyd v. City of New York,* 336 F.3d 72, 75 (2d Cir.2003). "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer,* 63 F.3d at 118; *see Feinberg v. Saks & Co.,* 56 N.Y.2d 206, 210, 451 N.Y.S.2d 677, 436 N.E.2d 1279 (1982) (Probable cause is "a complete defense to a cause of action for false arrest . . . ."). Probable cause is established "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.' " *O'Neill v. Town of Babylon,* 986 F.2d 646, 650 (2d Cir.1993) (quoting *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir.1989)). "The defendant has the burden of raising and proving the affirmative defense of probable cause." *Rodriguez v. City of New York,* 149 Misc.2d 295, 563 N.Y.S.2d 1004, 1005 (N.Y.Sup.Ct.1990) (citing *Broughton,* 37 N.Y.2d at 458, 373 N.Y.S.2d 87, 335 N.E.2d 310.) Here, both the arrest and subsequent prosecution of Brandon were based on the facts and documents provided by Salim. (Def. 56.1 ¶¶ 12–13.) Therefore, the issue for the Court to determine is whether Salim's account of Brandon's arrest constituted sufficient information to warrant a reasonable belief that Brandon possessed cocaine. Based on the record before the Court, an issue of material fact exists as to whether Salim had probable cause to arrest Brandon.

The key issue in this case is whether Brandon possessed the cocaine and tossed

the bag containing the drugs in plain view of Salim. On the one hand, Brandon testified that he did not throw anything on the ground and that he believed Salim "pulled [the drugs] out of [Salim's] pocket." (Brandon Dep. at 74:20–22, 95:20–25.) Salim, on the other hand, testified at the evidentiary hearing as well as in his deposition in this case that, as he approached the group of individuals from the south side of the street, he saw Brandon take "three steps back from the other individuals" and throw "an object to the ground to the left side." (Hearing Tr. at 22:10–23; see Salim Dep. at 32:14–21.) In fact, during his deposition Salim said that he was "100 percent sure [he] saw [Brandon] throw an object." (Salim Dep. at 34:10–11.) Salim's version of events, however, was contradicted by Stambuk's testimony. Stambuk testified that as he approached the group he saw Brandon step back from the group, and at this point, Stambuk focused his attention on Brandon. (Hearing Tr. at 222:18–21.) Stambuk further testified that he did not observe Brandon drop, throw, or toss anything. (*Id.* at 222:8–16.) Therefore, considering Brandon's contention that he never tossed the bag, together with Salim's claim that he observed Brandon toss the bag as he stepped back from the group and Stambuk's observation that he did not see Brandon toss the bag as he stepped back from the group, the Court is left with an issue of fact that must be decided by the jury.

In *Curry v. City of Syracuse*, the Court of Appeals was faced with a similar set of facts. 316 F.3d 324 (2d Cir.2003). There, the plaintiff, Curry, was chased down and apprehended by a police officer, Lynch. As Lynch tried to restrain Curry, he stated that he observed Curry reach into his sock and throw something away. *Id.* at 327. Curry testified that he never reached for his sock. *Id.* After Curry was arrested, Lynch testified that he returned to the scene and recovered a plastic bag contain-

ing crack cocaine. *Id.* at 328. In finding that a genuine issue of material fact existed, the Court of Appeals found that competing stories of Curry and Lynch were sufficient to raise a question of fact. *Id.* at 335–36. In addition, Lynch's partner, Officer Yarema, testified about the struggle between Lynch and Curry but did not testify about Curry's "reaching for his sock or throwing anything away." *Id.* at 336 n. 8. Here, the Court is faced with the competing stories of Brandon and Salim. Moreover, as was the case in *Curry* with Officer Yarema's testimony, Officer Stambuk's story does not corroborate Salim's version, and if anything, it buttresses Brandon's story. Accordingly, because a question of fact exists as to whether the officers had probable cause to arrest Brandon, Defendants' motion for summary judgment dismissing Brandon's claim of false arrest is denied.

### 1. *Qualified Immunity*

Defendants contend that even if probable cause were arguably to exist, they would still be entitled to summary judgment on the basis of qualified immunity. Police officers are immune from liability for money damages in suits brought against them in their individual capacities if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Court of Appeals has explained that "[e]ven where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir.1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641,

107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *see also Weyant v. Okst,* 101 F.3d 845, 857 (2d Cir.1996) ("[P]ublic officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights."). "A police officer's actions are objectively unreasonable, and therefore are not entitled to immunity, when 'no officer of reasonable competence could have made the same choice in similar circumstances.'" *Anthony v. City of New York,* 339 F.3d 129, 138 (2d Cir.2003) (quoting *Lennon,* 66 F.3d at 420–21).

■ Based on the record before the Court, Defendants Stambuk and Klausner are entitled to qualified immunity, but Salim is not. According to Klausner's and Stambuk's version of events, Salim stopped the car after telling the officers "that guy right there, that guy." (Hearing Tr. at 190:7–17.) Both Klausner and Stambuk were under the impression that Salim stopped the car because he believed one of the individuals on the street was carrying a firearm. (*Id.* at 208:2–4.) As they approached the group, both officers noticed Brandon had his hand on his waistband, an indicator that a person is carrying a gun. (*Id.* at 193:7–14.) In addition, both officers testified that Stambuk asked repeatedly that Brandon show him his hands, and when he did not, Stambuk tackled him. (*Id.* at 193:7–14, 212:24–213:4.) Finally, as Stambuk approached the group, he heard Salim yell "Charlie" which was the officers' code word for arrest. (*Id.* at 213:5–9.) "'Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists (*e.g.* a warrant, probable cause, exigent circumstances).'" *Anthony,* 339 F.3d at 138 (quoting *Bilida v. McCleod,* 211 F.3d 166, 174–75 (1st Cir.

2000)). Given that (1) Klausner and Stambuk believed Salim pulled the car over because he suspected one of the individuals on the street possessed a gun, (2) Brandon had his hand placed on his waistband and did not remove it when ordered to by Stambuk, and (3) Salim yelled the code word for arrest, it is clear that a reasonable officer would conclude that the necessary legal justification existed for an arrest. Accordingly, Defendants Stambuk and Klausner are entitled to qualified immunity for the arrest of Brandon.

■ In contrast, Defendant Salim is not entitled to qualified immunity because disputed facts exist as to whether Brandon tossed the bag of drugs. *See Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (An "arresting officer is entitled to qualified immunity as a matter of law if the *undisputed facts* and all permissible inferences favorable to the plaintiff show … that officers of reasonable competence could disagree on whether the probable cause test was met.") (emphasis added). To find that Salim is entitled to qualified immunity would require the Court to make a credibility determination and, as discussed above, "[r]esolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." *United States v. Rem,* 38 F.3d 634, 644 (2d Cir. 1994). Accordingly, Defendant Salim is not entitled to summary judgment dismissing Brandon's false arrest claim on the basis of qualified immunity.

### iii. *Malicious Prosecution*

■ The Court of Appeals has held that "[f]reedom from malicious prosecution is a constitutional right that has long been clearly established." (*Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir.2003)). "Claims for … malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free

from unreasonable seizures, are 'substantially the same' as claims for ... malicious prosecution under [New York] state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir.2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996)); *see also Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir.2003). To state a claim for malicious prosecution under New York law, the plaintiff must show: (1) "the defendant initiated a criminal proceeding"; (2) the proceeding terminated in plaintiff's favor; (3) "there was no probable cause for the criminal charge"; and (4) the defendant acted maliciously. *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir.2004); *see also Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir.2003); *Savino*, 331 F.3d at 72; *Kinzer v. Jackson*, 316 F.3d at 143; *Jocks*, 316 F.3d at 136; *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983). In addition, the Court of Appeals requires that in order "to sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir.2004) (internal quotation marks omitted); *see also Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir.2000) ("In order to allege a cause of action for malicious prosecution under § 1983, [the plaintiff] must assert, in addition to the elements of malicious prosecution under state law, that there was ... a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." (emphasis omitted)).

Here, it is undisputed that a criminal proceeding was initiated, that it terminated in Brandon's favor, and that Brandon suffered a liberty restraint (he was incarcerated for over three months). Therefore, the primary issues before the Court are whether Defendants had probable cause supporting the criminal charge and whether Defendants acted maliciously. "Once a suspect has been indicted ... the law holds that the Grand Jury action creates a presumption of probable cause." *Colon*, 60 N.Y.2d at 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248; *see Boyd*, 336 F.3d at 76 (same). A plaintiff may overcome the presumption "only by evidence establishing that the police witnesses have not made a complete and full statement of the facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Id.* at 82–83, 468 N.Y.S.2d 453, 455 N.E.2d 1248. "Thus, in order for a plaintiff to succeed in a malicious prosecution claim after having been indicted, 'he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Rothstein*, 373 F.3d at 283 (quoting *Colon*, 60 N.Y.2d at 83, 468 N.Y.S.2d 453, 455 N.E.2d 1248). In order to rebut the presumption of probable cause, a plaintiff must "establish what occurred in the grand jury and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially.'" *Id.* at 284 (quoting *Colon*, 60 N.Y.2d at 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248.) [2]

2. Defendants argue that because Brandon's indictment created a rebuttable presumption of probable cause and because Brandon has not unsealed the Grand Jury minutes, it would be impossible for the Court to determine whether the indictment was procured by fraud, perjury, or bad faith and therefore impossible for Brandon to rebut the presumption. (Def. Mem. at 5–6.) Brandon has submitted portions of Salim's grand jury testimony to the Court as proof that his testimony was contradicted by Stambuk's and Klausner's hearing testimony thereby creating a factual dispute sufficient to overcome the

As an initial matter, where a plaintiff's only evidence to rebut the presumption of the indictment is his version of events, courts will find such evidence to be nothing more than " 'mere conjecture and surmise that [the plaintiff's] indictment was procured as a result of conduct undertaken by the defendants in bad faith,' " which is insufficient to rebut the presumption of probable cause. *Reid v. City of New York*, 00 Civ. 5164, 2004 WL 626228, at *7 (S.D.N.Y. Mar. 29, 2004) (quoting *Savino*, 331 F.3d at 73); *see also Simmons v. New York City Police Dep't*, 97 Fed. Appx. 341, 343 (2d Cir.2004) ("Although [plaintiff] testified that the arresting officer ... told him that the officers would falsify evidence and manipulate line-ups in order to implicate him, this allegation is not, without more, sufficient to raise an inference that the indictment was procured by fraud or bad faith conduct."); *Scully v. City of Watertown*, No. 03 CV 846, 2005 WL 1244838, at *11 (N.D.N.Y. May 25, 2005) ("The simple assertion that [plaintiff] was acquitted and therefore the officers must have lied is insufficient to overcome the presumption created by the grand jury's indictment ...."); *Montes v. King*, 00 Civ. 4707, 2002 WL 1808209, at *3 n. 5 (S.D.N.Y. Aug. 6, 2002) (finding that "unsubstantiated speculation" that officer acted in bad faith was not enough to survive summary judgment); *Jenkins v. City of New York*, 98 Civ. 7170, 98 Civ. 7338, 1999 WL 782509, at *9, 11 (S.D.N.Y. Sept. 30, 1999) (despite later-discovered perjury by

a civilian witness at the grand jury, plaintiff "failed to produce any evidence of intentional police misconduct and his allegations are contradicted by the affidavits and contemporaneous documentary record in support of the motion. [Plaintiff] has thus failed to rebut the presumption that probable cause to commence the proceeding existed."), *aff'd*, 216 F.3d 1072 (2d Cir.2000). However, where, as here, the Court is presented with more than just the plaintiff's version of events, a question of fact may exist as to the propriety of the grand jury indictment.

In *Boyd v. City of New York*, the Court of Appeals set forth a "competing testimony plus" standard to assess whether a plaintiff sufficiently has rebutted the presumption of probable cause. 336 F.3d 72 (2d Cir.2003). In *Boyd*, plaintiff was arrested on suspicion that he was in possession of a stolen vehicle. *Id.* at 74. The central issue in *Boyd* was whether plaintiff made incriminating statements before or after he was placed under arrest. Plaintiff testified that he was placed under arrest in his apartment, was not given his Miranda warnings, and made incriminating statements while walking downstairs with police. *Id.* The defendants testified that plaintiff was not placed under arrest until he was outside the building thereby making his statements the product of a noncustodial interrogation. *Id.* In finding that plaintiff had satisfied his burden of raising a question of fact as to whether the indict-

grand jury presumption. (Pl. Mem. at 11.) However, because Brandon does not argue that Salim testified differently in the grand jury from the way he testified at the hearing or in his deposition, there is no need for the Court to consider the propriety of unsealing Salim's grand jury minutes. *See, e.g., Ramashwar v. City of New York*, No. 05 Civ. 2021, 2006 WL 23481, at *8 n. 10 (S.D.N.Y. Jan. 5, 2006), *aff'd* 231 Fed.Appx. 26 (2d Cir.2007) ("In order to ensure that granting summary judgment here is not a miscarriage

of justice, the Court has reviewed the sealed excerpts of Officer Finnegan's grand jury testimony which Ramashwar provided .... the Court makes no comment on these excerpts, except to say they do not change the Court's decision.") Here, as in *Ramashwar*, the Court has reviewed Salim's grand jury testimony and finds that because he testified to the same facts in both the state court hearing and in his deposition, there is no reason to delve into the unsealing issue.

ment was procured by fraud, perjury, or bad faith, the court looked to the police officer's memo book which seemed to corroborate plaintiff's testimony because it indicated that the plaintiff was arrested inside the building. *Id.* at 77. This corroboration, or "plus factor," coupled with the fact that court must draw all reasonable inferences in favor of plaintiff led the court to hold that "a jury could reasonably find the indictment was secured through bad faith or perjury, and that there was malicious prosecution of [plaintiff]." *Id.; see McClellan v. Smith,* 439 F.3d 137, 146 (2d Cir.2006) (relying on *Boyd* to reverse district court's grant of summary judgment due to defendant police officer's several variations to his version of events leading to plaintiff's arrest and due to plaintiff's evidence which suggested bad faith on the part of part of defendant).

Here, as in *Boyd,* the Court is faced with the competing version of events as put forth by Brandon and Salim. In addition, as discussed more fully above, Stambuk's recollection of the arrest tends to support Brandon's version. Accordingly, when the Court considers Stambuk's and Brandon's testimony in combination with Salim's testimony, the Court moves beyond a simple conflict of stories or mistaken memories and into the possibility that Salim did not observe Brandon toss the bag of cocaine but lied in order to secure an indictment. *See Boyd,* 336 F.3d at 77. At this stage of the litigation, construing all inferences in the light most favorable to Brandon, "a jury could reasonably find that the indictment was secured through bad faith or perjury, and that there was malicious prosecution of [Brandon]. Therefore the issue of probable cause cannot be resolved by summary judgment." *Id.*

Finally, once an issue of fact exists with regard to the possible lack of probable cause, the element of malice becomes an issue of fact as well. *See Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 131 (2d Cir.1997) ("In the present case, as we have just noted, a jury could find that probable cause for the charges against the plaintiffs was lacking, and that finding alone would support an inference of malice." (citing *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir.1996))); *see also Boyd,* 336 F.3d at 78 (same). Accordingly, Defendants' motion for summary judgment dismissing Brandon's claim for malicious prosecution is denied.

### 1. *Qualified Immunity*

■■■■ Defendants Klausner and Stambuk argue that because they had arguable probable cause to arrest Brandon, they are entitled to qualified immunity and the malicious prosecution claim should be dismissed as against them. It is undisputed that Salim completed the arrest paperwork and criminal court complaint and that Brandon's prosecution was based on facts provided by Salim. (Def. 56.1 ¶¶ 12–13.) "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Back v. Hastings On Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir.2004) (quoting *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977)). "Although a lack of personal involvement may be grounds for dismissing a claim on the merits ... such a lack is also relevant to a defense of qualified immunity because it goes to the question of whether a defendant's actions violated a clearly established right." *Iqbal v. Hasty,* 490 F.3d 143, 153 (2d Cir.2007), *rev'd on other grounds,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *McCullough v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 280 (2d Cir.1999)). Here, because neither Klausner nor Stambuk was involved in any of the post-arrest

conduct that led to Brandon's prosecution (*i.e.,* drafting the arrest paperwork, swearing to the criminal complaint, or testifying before the grand jury), each lacks the requisite personal involvement to be liable pursuant to § 1983 and is thus entitled to qualified immunity.[3]

### iv. *Malicious Abuse of Process*

■ As with Brandon's false arrest and malicious prosecution claims, the Court turns to state law to find the elements of the malicious abuse of process claim. *See generally Wilson v. Garcia,* 471 U.S. 261, 277, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (state law is authoritative source of elements of § 1983 cause of action). In New York, a malicious abuse of process claim lies against "a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. The City of New York,* 331 F.3d 63, 76 (2d Cir.2003); *see Curiano v. Suozzi,* 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984). "In the criminal context, malicious abuse of process is by definition a denial of procedural due process .... Procedural due process forbids the use of legal process for a wrongful purpose." *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994) (internal citations and quotation marks omitted). As examples of the types of collateral objectives covered by this tort, the New York Court of Appeals has cited the infliction of economic harm, extortion, blackmail and retribution. *See Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n,* 38 N.Y.2d 397, 404, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975).

■ In his Complaint, Brandon alleges that Defendants issued legal process to place him under arrest and did so with intent to harm Brandon and "in order to obtain a collateral objective outside the legitimate ends of the legal process." (Compl. ¶¶ 58–60.) However, "[u]nder New York law 'a malicious motive alone ... does not give rise to a cause of action for abuse of process.'" *Webster v. City of New York,* 333 F.Supp.2d 184, 208 (S.D.N.Y.2004) (quoting *Curiano,* 63 N.Y.2d at 117, 480 N.Y.S.2d 466, 469 N.E.2d 1324). "If [one] uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process." *Hauser v. Bartow,* 273 N.Y. 370, 374, 7 N.E.2d 268 (1937).

■ Here, Brandon does not allege that Defendants engaged in the legal process to compel performance or forbearance of some act. Moreover, Brandon alleges only conclusorily that Defendants engaged in the prosecution in order to obtain a collateral objective that was outside the legitimate ends of the process. (Compl. ¶ 59.) There is neither any explicit charge of extortion, blackmail, retribution, or similar extraneous harmful goal, nor are there any facts pleaded upon which an inference of such a motive on the part of Defendants could reasonably be inferred. Accordingly, Defendants' motion for summary judgment dismissing Brandon's claim for malicious abuse of process is granted.

### v. *Denial of the Constitutional Right to a Fair Trial*

■ Brandon claims that Defendants' actions in arresting him without probable cause and forwarding false information to the assistant district attorney deprived him of his constitutional right to a fair trial. Defendants argue that Brandon's fair trial claim should be dismissed because it is duplicative of his false arrest

---

**3.** For this same reason, both Klausner and Stambuk are entitled to summary judgment as to Brandon's remaining claims and are therefore dismissed from this action.

and malicious prosecution claims. A claim under § 1983 for violation of the right to a fair trial lies where a police officer "creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir.1997). The violation of the "accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Id.*

 As in this case, in *Ricciuti* the plaintiff brought claims for both malicious prosecution and denial of his fair right to trial based on the same alleged fabrication of evidence, and the Court of Appeals permitted both claims. *Id.* at 130–31; *see Jovanovic v. City of New York*, No. 04 Civ. 8437(PAC), 2006 WL 2411541, at *13 (S.D.N.Y. Aug. 17, 2006) (relying on *Ricciuti* and finding that both malicious prosecution and denial of fair trial claims can coexist). Accordingly, because Brandon's "prosecution was based on facts and documents provided by Officer Salim" (Def. 56.1 ¶ 13) and a question of fact exists as to whether Salim had probable cause to arrest Brandon, Defendants' motion for summary judgment dismissing Brandon's fair trial claim is denied. *See Douglas v. City of New York*, 595 F.Supp.2d 333, 347 (S.D.N.Y.2009) ("[A] reasonable jury could find defendants lacked probable cause to arrest plaintiff and forwarded false information to the Bronx district attorney, thereby violating plaintiff's constitutional right to a fair trial . . . ."); *Taylor v. City of New York*, No. 03 CV 6477, 2006 WL 1699606, at *5 (S.D.N.Y. June 21, 2006) (denying motion for summary judgment on plaintiff's denial of a fair trial claim on the basis of discrepancies in the parties' testimonies as to how the bag of drugs that led to plaintiff's arrest ended up on the ground next to plaintiff).

vi. *Municipal Liability*

As his final claim, Brandon asserts that the City of New York is liable for the individual Defendants' alleged constitutional violations pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Municipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983) (citing *Monell*, 436 U.S. at 658, 98 S.Ct. 2018). A municipality is not liable for a § 1983 claim on the theory of *respondeat superior* but rather on the basis that its policies or customs "inflict[ed] the injury upon the plaintiff." *Id.* "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Id.; see also Kahn v. Oppenheimer & Co.*, No. 08 Civ. 11368, 2009 WL 4333457, at *3 (S.D.N.Y. Dec. 1, 2009).

 A plaintiff may satisfy the "policy, custom or practice" requirement in one of four ways. *See Moray v. City of Yonkers*, 924 F.Supp. 8, 12 (S.D.N.Y.1996). The plaintiff may allege the existence of (1) a formal policy officially endorsed by the municipality (*see Monell*, 436 U.S. at 690, 98 S.Ct. 2018); (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question (*see Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404–06, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion); *Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir.1992)); (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom

or usage of which a supervising policy-maker must have been aware (*see Bd. of County Comm'rs,* 520 U.S. at 403–04, 117 S.Ct. 1382; *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018); or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees (*see Bd. of County Comm'rs,* 520 U.S. at 407, 117 S.Ct. 1382; *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Plaintiff must also prove a causal link between the policy, custom or practice and the alleged injury in order to find liability against a municipality. *See Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). " '[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.' " *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir.1998) (quoting *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)).

Brandon alleges the "customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department" that caused the unconstitutional violations included:

a) fabricating evidence against innocent persons erroneously arrested during buy-and-bust operations;

b) arresting innocent persons wrongfully apprehended during buy-and-bust operations; and

c) arresting innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing.

(Compl. ¶ 71.) Defendants argue that Brandon has conducted no *Monell* discovery and therefore has "no proof to support his allegations." (Def. Mem. at 23.) A moving party "may use a memorandum or brief to 'point to' the absence of evidence and thereby shift to the nonmovant the obligation to come forward with admissible evidence supporting its claim." *Feurtado v. City of New York,* 337 F.Supp.2d 593, 599 (S.D.N.Y.2004) (citing *Webster v. City of New York,* 333 F.Supp.2d 184, 206 (S.D.N.Y.2004) ("conclusory assertion in its memorandum of law that plaintiffs have no evidence to prove their case" is sufficient to require plaintiffs to provide evidence of *Monell* violation in order to avoid summary judgment)). Although the moving party generally has the burden of showing that no material issue of fact exists, this burden "may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.,* 315 F.3d 101, 105 (2d Cir.2002) (internal quotation marks and citations omitted). If the moving party moves for summary judgment on the basis that the nonmoving party has put forth no evidence to support his claim, "the burden shifts to the nonmoving party to come forward with 'specific facts showing that there is a genuine issue for trial.' " *Id.* (quoting Fed.R.Civ.P. 56(e)); *see generally Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *accord Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

■ To rebut Defendants' argument, Brandon attaches two exhibits to his opposition brief: (1) the Civilian Complaint Review Board's June 2001 study, entitled "Street Stop Encounter Report: An Analysis of CCRB Complaints Resulting from the New York Police Department's 'Stop and Frisk' Practices"; and (2) the Office of the Attorney General of the State of New

York, Civil Rights Bureau's December 1, 1999 report entitled "New York City Police Department's 'Stop and Frisk' Practices: A Report to the People of the State of New York from the Office of the Attorney General." (Norinsberg Decl., Exs. J, K.). Brandon offers the two reports to support his contention that his stop was based on the NYPD's policy of "wrongfully stopping and detaining African–Americans based on racial profiling." (Pl. Mem. at 24.) However, the Complaint does not allege that the improper policy or custom was racial profiling but rather that it was based on the fabricating of evidence in buy-and-bust operations. (*See* Compl. ¶ 71.) It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment. *See Beckman v. U.S. Postal Serv.*, 79 F.Supp.2d 394, 407–08 (S.D.N.Y.2000); *see Bush v. Fordham Univ.*, 452 F.Supp.2d 394, 406 (S.D.N.Y.2006) ("[C]ourts in this district have consistently ruled that it is inappropriate to raise new claims for the first time in opposition to summary judgment.") (internal quotations omitted). Accordingly, because Defendants assert that Brandon has put forth no evidence to support his *Monell* claim, thereby shifting the burden to Brandon to produce some evidence and because Brandon has proffered reports that are irrelevant to his claim, Defendants' motion for summary judgment dismissing the *Monell* claim is granted. *See, e.g., Miller v. New York City Health & Hosp. Corp.*, 00 Civ. 140(PKC), 2005 WL 2022016, at *4 (S.D.N.Y. Aug. 22, 2005) (granting summary judgment on Section 1981 claim because plaintiff provided no evidence of municipal policy or custom); *Webster v. City of New York*, 333 F.Supp.2d 184, 207 (S.D.N.Y.2004) (granting summary judgment where "[t]he record ... is barren of specific evidence demonstrating the existence of a municipal

policy or custom such as would satisfy Plaintiffs' burden").

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment and for judgment on the pleadings [dkt. no. 18] is GRANTED in part and DENIED in part as follows:

1) Defendants' motion for judgment on the pleadings pursuant to Fed. R. 12(c) as to Plaintiff's deprivation of his federal civil rights and unlawful search claims is GRANTED;

2) Defendants' motion for summary judgment dismissing Plaintiff's malicious abuse of process claim is GRANTED;

3) Defendants' motion for summary judgment dismissing Plaintiff's *Monell* claim is GRANTED;

4) Defendants' motion for summary judgment dismissing Plaintiff's false arrest, malicious prosecution, and denial of fair trial claims is GRANTED with respect to Defendants Marc Klausner and Andro Stambuk and DENIED with respect to Defendant Said Salim.

Accordingly, the only remaining defendant is Officer Said Salim, individually and in his official capacity. Officers Marc Klausner and Andro Stambuk and the City of New York are dismissed from the action. The remaining parties shall confer and notify the Court by letter no later than April 9, 2010 how they propose to proceed. The letter shall include a determination by Plaintiff as to the John Doe defendants.[4]

SO ORDERED.

---

**4.** With respect to Plaintiff's false arrest and denial of his right to a fair trial, Plaintiff

timely filed his complaint on October 12, 2007, but he failed to substitute the defendants designated as "John Doe" with actual people within the limitations period. *See Owens v. Okure,* 488 U.S. 235, 250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (In section 1983 actions, the applicable limitations period is found in the "general or residual [state] statute [of limitations] for personal injury actions."); *Ormiston v. Nelson,* 117 F.3d 69, 71 (2d Cir.1997) ("New York's three-year statute of limitations for unspecified personal injury actions ... governs section 1983 actions in New York."). As the Court of Appeals held in *Tapia-Ortiz v. Doe,* "[a]lthough [plaintiff] filed his complaint naming the defendant officers as 'John Does' within the three-year statute of limitations period, '[i]t is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued.'" 171 F.3d 150, 151–52 (2d Cir.1999) (quoting *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1075 (2d Cir.1993) (citations omitted)). Even if Plaintiff were to substitute the actual officers today, Plaintiff could not enjoy the benefit of relating back to the date of the original filing. *See Barrow v. Wethersfield Police Dept.,* 66 F.3d 466, 470 (2d Cir. 1995) ("Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake."); *Wallace v. Kato,* 549 U.S. 384, 397, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); *Veal v. Geraci,* 23 F.3d 722, 724 (2d Cir.1994) ("[F]or statute of limitations purposes, a § 1983 claim, including a Sixth Amendment fair trial claim, accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm."). However, because the criminal charges against Plaintiff were not dismissed until April 30, 2007, Plaintiff may still add unidentified defendants to his malicious prosecution claim because the three-year statute of limitations does not expire until April 30, 2010. *See Voluntary Ben. Systems, Inc. v. Israel,* No. 01 Civ. 8518, 2003 WL 22299211, at \*2 (S.D.N.Y. Oct. 7, 2003) (noting that under New York law, a malicious prosecution claim accrues "after that prosecution terminates favorably to the plaintiff").