Shaniqua **FOLK**, Plaintiff,

v.

The **CITY OF NEW YORK; Police Officer Robert A. Manzi, Shield No. 12783; Det. Arthur Umlauf, Shield No. 25307, Police Officer Steven Florio, Shield No. 17538; Police Officer Derrick Boyd, Shield No. 10014; Sergeant William Schmidt, Shield No. 3392; Police Officer John Doe Five, in his individual and official capacities as an employee of the City of New York,** Defendants.

15–CV–5810 (WFK) (CLP)

United States District Court,
E.D. New York.

Signed March 20, 2017

Filed March 21, 2017

Amy Rameau, Afsaan Saleem, The Rameau Law Firm, Brooklyn, NY, for Plaintiff.

Suzanne Emily Aribakan, New York City Law Department, New York, NY, for Defendants.

## DECISION & ORDER

WILLIAM F. KUNTZ, II, United States District Judge:

Police Officer Robert Manzi, Detective Arthur Umlauf, Police Officer Derrick Boyd, Police Officer Steven Florio, Sergeant William Schmidt, and John Doe 5 (together, the "Individual Defendants"), together with the City of New York (the "City") (collectively, "Defendants") move to dismiss plaintiff Shaniqua Folk's ("Plaintiff") complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). This action arises out of Plaintiff's arrest, allegedly by the Individual Defendants, after a conflict between Plaintiff and her ex-boyfriend. Plaintiff seeks recovery under 42 U.S.C. § 1983 for violations of her Fourth, Fifth, and Fourteenth Amendment rights, specifically iterated as claims for false arrest, malicious prosecution, denial of her right to a fair trial, and failure to intervene, as well as a state common law claim for malicious

abuse of process. Plaintiff alleges the City is liable for these alleged constitutional violations under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND [1]

On September 17, 2014, Plaintiff was walking to work when her ex-boyfriend, Tyrish Stevenson, approached her on the street, pulled a gun on her, and forced her into his car. Am. Compl. ¶¶ 20–21, ECF No. 14. After driving around the block, Stevenson parked his car, pointed the gun at Plaintiff, and threatened to kill her. *Id.* ¶ 22. Plaintiff, terrified, fled the car, yelling, "He is trying to kill me" and "Please help." *Id.* ¶ 23. Stevenson forced her back into the car and "a struggle ensued." *Id.* ¶ 25. The Individual Defendants were parked directly behind Stevenson's car, witnessed these events, and allegedly knew or should have known of Plaintiff's distress and the ongoing struggle between her and Stevenson, but did not intervene. *Id.* ¶¶ 24–25.

During this struggle, Plaintiff took the gun from Stevenson and tossed it through the car's window. *Id.* ¶¶ 26–29. Thereafter, the Individual Defendants approached Stevenson's vehicle, and Stevenson ran away while Plaintiff yelled, "He had a gun" and "[H]e said he would kill me." *Id.* ¶¶ 29–32. The Individual Defendants called for backup and asked Plaintiff to wait in the car while they searched for the gun. *Id.* ¶¶ 34–35. The Individual Defendants found the gun and, thereafter, charged Plaintiff with criminal possession of a weapon. *Id.* ¶ 35. Stevenson was allegedly never charged for

---

1. For the purposes of resolving the motion to dismiss, the Court assumes all well-pleaded facts in the Amended Complaint to be true, drawing all reasonable inferences in favor of Plaintiff. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

his assault of Plaintiff. *Id.* ¶ 36. Plaintiff was subsequently taken to Kings County Central Booking, where the Individual Defendants "falsely informed" the District Attorney's Office they had "observed [her] committing various crimes." *Id.* ¶ 39–40. The charges against Plaintiff were "dismissed and sealed" on January 16, 2015. *Id.* ¶ 41.

## PROCEDURAL HISTORY

Plaintiff filed this action on October 8, 2015. ECF No. 1. She thereafter served summonses on the City and Officer Manzi. ECF Nos. 4, 5. Plaintiff filed her Amended Complaint on February 19, 2016, and subsequently issued amended summonses as to all Defendants. ECF Nos. 14, 15. The Amended Complaint states seven claims for injuries caused by these events (hereinafter referred to as "her arrest"): (1) violations of her Fourth, Fifth, and Fourteenth Amendment rights brought under 42 U.S.C. § 1983, *id.* ¶ 42–44; (2) false arrest absent probable cause in violation of her Fourth and Fourteenth Amendment rights, *id.* ¶¶ 45–47; (3) malicious prosecution in violation of her Fourth and Fourteenth Amendment rights, *id.* ¶¶ 48–54; (4) denial of her right to a fair trial in violation of the Due Process Clause of the Fifth and Fourteenth Amendments, *id.* ¶¶ 55–61; (5) malicious abuse of process, *id.* ¶¶ 62–69; (6) failure to intervene in violation of the Fourth, Fifth, and Fourteenth Amendments, *id.* ¶¶ 70–73; and (7) municipal liability under *Monell* due to "policies, practices, and customs" that "directly caused the constitutional violations suffered" by Plaintiff, *id.* ¶¶ 74–87. Plaintiff seeks compensatory and punitive damages, as well as attorneys' fees and litigation expenses. *Id.* at 15–16.

On April 8, 2016, defendants the City and Manzi filed their fully briefed motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[2] ECF Nos. 16–20. The amended summonses were returned executed as to the Officer Boyd, Detective Umlauf, Sergeant Schmidt, and Officer Florio on January 9, 2017. ECF Nos. 28–31.

## STANDARD OF REVIEW

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Accordingly, in deciding this Motion, the Court must "assess the legal feasibility of the complaint, not ... assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (internal citation and quotation marks omitted). In so doing, the Court must "accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor," *Chambers*, 282 F.3d at 152, but is "not bound to accept as true a legal conclusion couched as a factual allegation," *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717

---

2. As not all of the Individual Defendants had been properly served when Defendants' motion was filed, Defendants' submitted the motion on behalf of the City and Manzi and requested that this Court construe it as applying to all Defendants if service on the remaining Individual Defendants was completed. Mem. Supp. Defs.' Mot. Dismiss ("MTD") at 1 n.1, ECF No. 18. As service was completed on January 9, 2017, *see* ECF Nos. 28–31, and Plaintiff's arguments relate to all the Defendants, this Court decides this motion as to all Defendants.

(2d Cir. 2013) (citation and internal quotation marks omitted).

## ANALYSIS

### I. Sufficiency of the Allegations Against the Individual Defendants

■ As a preliminary matter, Defendants contend that most of Plaintiff's claims must be dismissed because Plaintiff has not alleged the Individual Defendants were personally involved in her arrest, which is an essential element of a § 1983 claim against an individual state actor. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Since the Amended Complaint does not allege supervisory liability (although two of the Individual Defendants appear to hold supervisory roles), Plaintiff must plead that the Individual Defendants "personal[ly] participat[ed]" in the deprivation of her constitutional rights and "ha[d] knowledge of the facts that rendered the conduct illegal" to state a claim against them under § 1983. *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001).

Although the factual allegations in the Amended Complaint are somewhat meager, Plaintiff does allege that each Individual Defendant "directly participated or failed to intervene in the violation of [her] rights." Am. Compl. ¶¶ 8, 10, 12, 14, 16. Plaintiff later refers to "the officers [who were] parked directly behind" Stevenson's car, *id.* ¶ 24, the "Defendants who were sitting in an unmarked car" behind Stevenson's car, *id.* ¶ 30, and "[t]he defendant officers [who] located the gun and arrested" Plaintiff, *id.* ¶ 35, in the narrative regarding her arrest. Plaintiff argues in reply that, despite this inconsistent phrasing, she specifically pleaded that "all of the [Individual Defendant] officers were present on scene" of her arrest. Pl.'s Memo. Opp. Defs.' Mot. Dismiss ("Opp.") at 5, ECF No. 19.

Viewed in the light most favorable to Plaintiff, the Amended Complaint plausibly alleges that all of the Individual Defendants directly participated in Plaintiff's arrest, *see Garcia v. Fischer*, 13–CV–8196, 2016 WL 297729, at *7 (S.D.N.Y. Jan. 22, 2016) (Briccetti, J.) (finding complaint alleging individual defendants were present for incident survived motion to dismiss despite failure to explicitly state which of the individual defendants made the relevant decision); *Messina v. Mazzeo*, 854 F.Supp. 116, 126–28 (E.D.N.Y. 1994) (Glasser, J.) (declining to dismiss § 1983 claims for failure to specify defendant police officers' roles in incident), or, in the alternative, failed to intervene to prevent it, *see Buchy v. City of White Plains*, 14–CV–1806, 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015) (Briccetti, J.) (finding excessive force and failure to intervene claims against same defendant could proceed in the alternative to summary judgment stage). While Plaintiff must prove the roles the Individual Defendants played in her arrest to prevail on the merits, *see Gaines v. Okpok*, 03–CV–5095, 2006 WL 1652654, at *3 (E.D.N.Y. June 9, 2006) (Townes, J.) (granting summary judgment against plaintiff who did not prove defendant's "personal involvement" in alleged constitutional violation), this Court will not dismiss her claims at this stage solely because her narrative is imprecise as to each Individual Defendant's role in her arrest.

### II. Plaintiff's Stand Alone Section 1983 Claim

■ Plaintiff's first substantive claim—a violation of her Fourth, Fifth, and Fourteenth Amendment rights raised pursuant to 42 U.S.C. § 1983—must be dismissed for failure to provide Defendants, or this Court, notice regarding the substance of or factual basis for this claim. To state a claim under § 1983, a complaint must allege the conduct at issue (1) was

"attributable ... to a person who was acting under color of state law" and (2) "deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). With regard to the second element, "[s]ection 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere," *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), and Plaintiff must be specific as to which of her constitutional rights were violated in order to provide Defendants with "fair notice of what the claim is and the grounds upon which it rests," *Sforza v. City of New York*, 07–CV–6122, 2009 WL 857496, at *12 (S.D.N.Y. Mar. 31, 2009) (Cote, J.) (quoting *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006)).

Here, Plaintiff has not identified which of her constitutional rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments were allegedly violated or specified the factual basis for the claim. Consequently, she failed to give Defendants notice of any harms she suffered separate and apart from her other, more specific, claims for false arrest, malicious prosecution, denial of a right to a fair trial, and failure to intervene (which she also alleges to be violations of her Fourth, Fifth, and Fourteenth Amendment rights). *See* Am. Compl. ¶¶ 45–61, 70–73. This § 1983 claim must therefore be dismissed, as Plaintiff has not adequately pleaded a plausible cause of action distinct from her remaining claims. *See Brandon v. City of New York*, 705 F.Supp.2d 261, 264, 268–69 (S.D.N.Y. 2010) (Preska, C.J.) (dismissing "catchall" claim for violation of "federal civil rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments" for failing to "set forth a plausible cause of action" or provide fair notice).

Plaintiff's first cause of action is therefore DISMISSED.

## III. False Arrest

### A. Probable Cause

█ Plaintiff claims her arrest constituted a false arrest that violated the Fourth and Fourteenth Amendments of the Constitution.[3] "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). To plead false arrest under New York law, Plaintiff must allege: (1) the Individual Defendants "intended to confine" her; (2) she "was conscious of the confinement;" (3) she "did not consent to the confinement" and (4) her "confinement was not otherwise privileged." *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975). An arrest may be "privileged" if it was "based on probable cause." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003). Consequently, the "existence of probable cause to arrest ... is a

---

**3.** Plaintiff does not explicitly invoke 42 U.S.C. § 1983, which establishes a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution," as basis for her false arrest, right to a fair trial, or failure to intervene claims, Am. Compl. ¶¶ 45–47, 55–61, 70–73, but, given her overarching description of the action as having been raised under § 1983, Am. Compl. ¶ 1, she presumably intended to employ § 1983 as the basis for these causes of action, *Marisol A. by Forbes v. Giuliani*, 929 F.Supp. 662, 673 (S.D.N.Y. 1996) (Ward, J.) (explaining § 1983 is "a vehicle through which a private plaintiff may pursue a claim for an alleged constitutional violation by a person acting under color of state law"). Accordingly, this Court will construe these claims as having been pleaded as under 42 U.S.C. § 1983.

complete defense to an action for false arrest." *Weyant*, 101 F.3d at 852 (citation and internal quotation marks omitted).

■■■ Defendants contend Plaintiff's false arrest claim must fail because there was probable cause to arrest Plaintiff for criminal possession of a weapon under New York Penal Law §§ 265.01(1) and 265.03(3), which prohibit the possession of a loaded firearm. "In general, probable cause to arrest exists when the officers have knowledge ... of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* This determination "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." *Maryland v. Macon*, 472 U.S. 463, 470, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) (quoting *Scott v. United States*, 436 U.S. 128, 136, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). Defendants assert that, since Plaintiff "took the gun and tossed it out [of] the window," it was objectively reasonable, under the circumstances, for the Individual Defendants to arrest her for criminal possession of a weapon. MTD at 8.

■■■ While Plaintiff admits she held Stevenson's gun when she tossed it from the window of his car, she argues this does not constitute "possession" under New York law, as she was "disarming a wrongful possessor" at the time. Opp. at 6 (quoting *People v. Persce*, 204 N.Y. 397, 402, 97 N.E. 877 (1912)). Under New York law, temporary and lawful possession of a weapon, including "possession incident to the disarming of another," *People v. Snyder*, 138 A.D.2d 115, 530 N.Y.S.2d 617, 619 (3d Dep't 1988), may be a defense to a criminal possession charge, *People v. Williams*, 50 N.Y.2d 1043, 1045, 431 N.Y.S.2d 698, 409 N.E.2d 1372 (1980). While Defendants correctly point out that the standard for criminal possession is not the same as that for probable cause to arrest, Defs. Reply Memo. at 4, ECF No. 20, "[t]he police must not ignore exculpatory evidence that would void probable cause if taken into account," *Celestin v. City of New York*, 581 F.Supp.2d 420, 432 (E.D.N.Y. 2008) (Glasser, J.). "[U]nder some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause" and, therefore, "[d]efenses which negate the existence of a crime should similarly negate probable cause" if they are apparent to the officer at the time of the arrest. *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003). Accordingly, contrary to Defendants' assertion, whether the Individual Defendants were aware that Plaintiff's brief possession of Stevenson's weapon was the direct result of disarming him is relevant to the determination of whether there was probable cause to arrest her.

According to Plaintiff, whose version of events the Court must credit at this stage, the Individual Defendants witnessed Plaintiff's struggle with Stevenson, which resulted in her throwing the gun from the car, and heard her scream, "He is trying to kill me" and "Please help." Am. Compl. ¶¶ 22–25. After the Individual Defendants approached Stevenson's car, they saw Stevenson "take off running" while Plaintiff screamed, "He had a gun" and, "[H]e said he would kill me." *Id.* ¶¶ 30–32. In sum, Plaintiff alleges the Individual Defendants saw her struggle with Stevenson, heard her cries for help, and were directly informed that she had been the victim of a crime. Under these circumstances, it was not reasonable to believe that Plaintiff was the perpetrator of a crime, even where she was briefly in possession of a gun, so this Court cannot conclude, as a matter of law, there was probable cause for Plaintiff's arrest. *See Daniels v. New York City*, 117 F.Supp.3d 239, 242 (E.D.N.Y. 2015) (Glas-

ser, J.) (finding no probable cause existed in light of arresting officer's "peremptory dismissal" of arrestee's explanation for alleged crime); *Wong v. Yoo*, 649 F.Supp.2d 34, 60 (E.D.N.Y. 2009) (Sifton, J.) (declining to find probable cause as a matter of law where circumstances may have required officer to investigate if arrestee acted in self-defense).

### B. Qualified Immunity

 Defendants alternatively argue that the Individual Defendants are entitled to qualified immunity as to Plaintiff's claim for false arrest. Under the doctrine of qualified immunity, "officials who act in ways they reasonably believe to be lawful ... [may not be] held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "[Q]ualified immunity protects a police officer from liability for civil damages [for false arrest claims] if: (1) 'it was objectively reasonable for the officer to believe that probable cause existed,' or (2) 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Jurkowitsch v. City of New York*, 14–CV–6810, 2015 WL 8489964, at *6 (E.D.N.Y. Dec. 9, 2015) (Chen, J.) (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999)). Because qualified immunity turns on the question of probable cause, Defendants' argument fails, as this Court cannot find that reasonable officers would disagree whether there was probable cause to arrest Plaintiff at this early stage in the litigation. *See id.* (rejecting qualified immunity arguments where court could not determine whether probable cause existed at motion to dismiss stage).

Defendants' motion to dismiss Plaintiff's false arrest claim is therefore DENIED.

### IV. Malicious Prosecution

 Plaintiff also asserts a claim for malicious prosecution in violation of the Fourth and Fourteenth Amendments. Under New York law, Plaintiff must prove four elements to establish a claim for malicious prosecution: (1) "the initiation of a proceeding," (2) termination of said proceeding favorably to the plaintiff, (3) "lack of probable cause," and (4) malice. *Savino*, 331 F.3d at 72. With respect to the fourth element, "actual malice can be inferred when a plaintiff is prosecuted without probable cause." *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016) (citation omitted). Where a Fourth Amendment violation is asserted, the plaintiff must also plead "some deprivation of liberty consistent with the concept of 'seizure.'" *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995). This seizure "must have been effected 'pursuant to legal process.'" *Id.* at 117 (quoting *Heck v. Humphrey*, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)). Consequently, when an initial arrest was not made pursuant to a warrant, this element must be satisfied by pleading "post-arraignment deprivations of liberty," as an initial warrantless arrest does not implicate legal procedure. *Id.*; *cf. also Broughton*, 37 N.Y.2d at 457, 373 N.Y.S.2d 87, 335 N.E.2d 310 ("The distinction between false imprisonment and malicious prosecution in the area of arrest depends on whether or not the arrest was made pursuant to a warrant.")

Plaintiff has not alleged any facts demonstrating she suffered a post-arraignment deprivation of liberty, and therefore her malicious prosecution claim fails. There are a number of circumstances short of post-arraignment incarceration that constitute a seizure, including being required to meet bail conditions, *see Jocks*, 316 F.3d at 136 ("the requirements ... obeying the conditions of bail suffice"), enduring restrictions on one's ability to travel, *Murphy v. Lynn*, 118 F.3d 938, 945 (2d Cir. 1997), or even attending a series of court proceedings, *see Wong*, 649 F.Supp.2d at 67–68 (finding de-

privation of liberty prong satisfied where arrestee "appear[ed] in court between eight and ten times over a year and a half"), *but see Johnston v. Port Auth. of N.Y. & N.J.*, 09–CV–4432, 2011 WL 3235760, at *7 (E.D.N.Y. July 28, 2011) (Gleeson, J.) (finding no constitutional seizure where plaintiff had to appear in court four times without other "burdensome conditions"). While Plaintiff may have made a number of court appearances or suffered other restrictions on her liberty, she has failed to plead any facts that would support such an inference. As such, she has failed to establish she is entitled to relief on this claim. *See Smith v. City of New York*, 1 F.Supp.3d 114, 121–22 (S.D.N.Y. 2013) (Schofield, J.) (dismissing malicious prosecution complaint that did not allege facts supporting allegations of post-arraignment deprivation of liberty); *Dellutri v. Village of Elmsford*, 895 F.Supp.2d 555, 571–72 (S.D.N.Y. 2012) (Karas, J.) (dismissing malicious prosecution claim where plaintiff did not "specif[y] the number of court appearances he made [or] . . . whether there were any restrictions on his travel or on his liberty in general").[4]

Defendant's motion to dismiss Plaintiff's malicious prosecution claim is therefore GRANTED.

## V. Right to a Fair Trial

 Plaintiff's claim for denial of her constitutional right to a fair trial must also fail also due to the dearth of factual allegations Plaintiff offers in support of them. A person is deprived of her constitutional right to a fair trial when "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 Fed.Appx. 149, 152 (2d Cir. 2012). Plaintiff's allegations are largely a reiteration of these elements, as she states the Individual Defendants "created false evidence" against her, "forwarded [that] evidence to prosecutors," and "knew that the prosecutors would rely upon [that] information." Am. Compl. ¶¶ 56–59. Even if these allegations were sufficient to meet the *Iqbal* standard, *see Nieves v. Fahmy*, 15–CV–7297, 2017 WL 496067, at *3 (E.D.N.Y. Feb. 6, 2017) (Donnelly, J.) (dismissing fair trial claims where complaint was "simply a laundry list of legal conclusions" that failed to specify what the defendant "did to fabricate information, or how this information was conveyed to prosecutors"), Plaintiff's failure to plead a deprivation of liberty sinks her fair trial claim, *Morse v. Spitzer*, 07–CV–4793, 2012 WL 3202963, at *5–6 (E.D.N.Y. Aug. 3, 2012) (Amon, C.J.) (noting "§ 1983 cases involving . . . [allegations] a police officer fabricated evidence and forwarded it to prosecutors *in order to provide probable cause* for an arrest or prosecution . . . , a plaintiff's malicious prosecution and fair

---

4. Even if a seizure had been properly pleaded, Plaintiff's malicious prosecution claim remains flawed. For instance, Plaintiff's Amended Complaint is imprecise as to what proceedings were commenced against her and the roles the Individual Defendants played in initiating them. Further, although Plaintiff asserts the legal conclusion that her "criminal case was resolved in [her] favor," Am. Compl. ¶ 53, the only fact she alleges to support this conclusion is that "all charges against [her] were dismissed and sealed" on January 16, 2015, *id.* ¶ 41. These allegations are insufficient for this Court to find the case was terminated in her favor, as a "prosecution [that does] not result in an acquittal . . . is deemed to have ended in favor of the accused . . . only when its final disposition is such as to indicate the innocence of the accused." *Murphy*, 118 F.3d at 948. "Certain types of dispositions that do not result from adjudication of the merits have generally been held not sufficiently favorable to the accused to be indicative of innocence," including, *inter alia*, dismissals in the interests of justice. *Id.* at 948–49.

trial claims would rise or fall together" (italics in original)).

Plaintiff's fourth claim is therefore DISMISSED.

## VI. Malicious Abuse of Process

 In her briefing, Plaintiff failed to address her claim for malicious abuse of process, thereby abandoning it. *See, e.g., Burchette v. Abercrombie & Fitch Stores, Inc.,* 08–CV–8786, 2009 WL 856682, at *9 (S.D.N.Y. Mar. 30, 2009) (Berman, J.) (dismissing claims as abandoned where plaintiff failed to address them in opposition to motion to dismiss all claims). Even if she had defended her claim, though, it is inadequately pleaded. Under New York law, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir. 1994). A "collateral objective" is not the same as a "malicious motive" and must exist "beyond or in addition to [the] criminal prosecution," *Savino,* 331 F.3d at 77, but it is "usually characterized by personal animus," *Jovanovic v. City of New York,* 04–CV–8437, 2010 WL 8500283, at *9 (S.D.N.Y. Sept. 28, 2010) (Crotty, J.), *aff'd,* 486 Fed.Appx. 149 (2d Cir. 2012) (citation omitted). Such an objective may include "infliction of economic harm, extortion, blackmail [or] retribution." *Brandon v. City of New York,* 705 F.Supp.2d at 275. In other words, "[a]buse of process resembles a form of extortion, by which the defendant invokes legal process to coerce the plaintiff into doing something other than what the process necessitates." *Krebs v. United States,* 98–CV–2590, 1999 WL 185263, at *5 (S.D.N.Y. Mar. 31, 1999) (Mukasey, J.).

In this instance, the "collateral objectives" Plaintiff pleads directly relate to the Individual Defendants' roles as police officers and the criminal prosecution, to wit, "obtain[ing] credit for an additional arrest," Am. Compl. ¶ 66, "allow[ing] themselves to obtain additional overtime, *id.* ¶ 67, and "cover[ing] up the fact that they did not want to treat [her] as a victim of domestic violence," *id.* ¶ 64. Even if this last allegation could be construed as being "characterized by personal animus," Plaintiff does not allege the Individual Defendants "aimed to achieve a collateral purpose beyond or in addition to [her] criminal prosecution," *Savino,* 331 F.3d at 77 (dismissing malicious abuse of process claim alleging prosecution had been instigated to "seek vindication for . . . political embarrassment" as failing to allege an "ulterior purpose or objective"), and therefore has failed to allege a plausible malicious abuse of process claim.

Plaintiff's fifth claim for relief is DISMISSED.

## VII. Failure to Intervene

 Plaintiff's final claim against the Individual Defendants is failure to intervene to prevent her arrest. "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994). "An officer who fails to intervene is liable for the preventable harm caused by other officers where that officer observes or has reason to know" that other officers have committed a constitutional violation, provided the officer has "a realistic opportunity to intervene to prevent the harm from occurring." *Id.*

 As discussed above, Plaintiff alleges each of the Individual Defendants

"directly participated in or failed to intervene in the violation of [her] rights," *see* Am. Compl. ¶ 8, and phrases her allegations in a manner that suggests that each of the Individual Defendants participated in her arrest, *see id.* ¶ 35 ("[t]he defendant officers located the gun and arrested Plaintiff"). "Where the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable." *Sanabria v. Detective Shawn Tezlof*, 11–CV–6578, 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016) (Roman, J.). Even so, "[w]here a plaintiff has properly alleged a constitutional violation, he is 'entitled to discovery to determine which officers participated directly in the alleged constitutional violations and which officers were present and failed to intervene.'" *Gersbacher v. City of New York*, 134 F.Supp.3d 711, 725 (S.D.N.Y. 2015) (Woods, J.) (quoting *Matthews v. City of New York*, 889 F.Supp.2d 418, 444 (E.D.N.Y. 2012) (Matsumoto, J.)). Accordingly, Plaintiff will be allowed to proceed with her false arrest claims or, in the alternative, her failure to intervene claims against all Individual Defendants, but she will ultimately need to refine her allegations with regard to the roles played by each of the Individual Defendants. *See, e.g., Cuellar v. Love*, 11–CV–3632, 2014 WL 1486458, at *8 (S.D.N.Y. Apr. 11, 2014) (Román, J.) (granting summary judgment on failure to intervene claims where defendant participated directly in the constitutional violation).

Defendant's motion to dismiss Plaintiff's failure to intervene claim is DENIED.

## VIII. *Monell* Claims Against the City of New York

Plaintiff also asserts the City is liable for her alleged false arrest under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As with her malicious abuse of process claim, however, Plaintiff failed to address her *Monell* claim in her briefing and consequently has abandoned it. *See Brandon*, 705 F.Supp.2d at 268 (deeming claims abandoned where plaintiff did not raise any arguments on them in motion to dismiss briefing). Even if Plaintiff had not abandoned her *Monell* claim, she has failed to plead factual allegations sufficient to support it.

In *Monell*, the Supreme Court held that municipalities and other units of local government could be held liable under § 1983 when the constitutional deprivation in question was alleged to have been caused by the municipality through an official policy or custom. 436 U.S. at 694–95, 98 S.Ct. 2018. This may be alleged in one of four ways:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Kucharczyk v. Westchester Cty.*, 95 F.Supp.3d 529, 538–39 (S.D.N.Y. 2015) (Karas, J.) (citation omitted). "A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (citation omitted).

While Plaintiff repeatedly alleges official policies and municipal practices "directly caused the constitutional violations [she]

suffered," Am. Compl. ¶ 75, such as (1) hiring practices that "lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the constitution," *id.* ¶ 76; (2) a "*de facto* quota policy that encourages ... false arrests," *id.* ¶ 77; and (3) an anti-gun policy that encourages officers to "arrest as many people as possible and charge them with crimes pertaining to guns," *id.* ¶¶ 78–83, she provides no factual support for these allegations, and therefore they do not rise above the level of "conclusory, boilerplate language," *Bradley v. City of New York*, 08–CV–1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) (Garaufis, J.). Although Plaintiff is not expected to *prove* her theory of municipal liability at the motion to dismiss stage, she must offer some support for the alleged policies that caused her constitutional violation in order to "nudge[ ] [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. She may do so by, among other things, proffering "cases or complaints in state or federal court alleging similar misconduct," *Hunter v. City of New York*, 35 F.Supp.3d 310, 324 (E.D.N.Y. 2014) (Brodie, J.), newspaper articles describing instances of similar conduct, *see id.* at 325 (finding complaint incorporating a single newspaper article related to alleged municipal policy was "sufficient, perhaps just barely, to plausibly state a claim of municipal liability"); *see also Gonzalez v. New York City*, 16–CV–00254, 2016 WL 7188147, at *8 (S.D.N.Y. Dec. 2, 2016) (McMahon, J.) (similar), or reports published by government agencies, *Bektic–Marrero v. Goldberg*, 850 F.Supp.2d 418, 431 (S.D.N.Y. 2012) (McMahon, J.). Because Plaintiff has offered this Court no facts from which it can infer the policy or practices she complains of in fact exist, her *Monell* claim fails. *Cf. Colon v. City of New York*, 09–CV–8, 09–CV–9, 2009 WL

4263362, at *2 (E.D.N.Y. Nov. 25, 2009) (Weinstein, J.) (declining to dismiss *Monell* claims where court could rely on anecdotal evidence and judicial experience to find them plausible).

Defendants' motion to dismiss Plaintiff's *Monell* claim is therefore GRANTED.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is DENIED in part and GRANTED in part. Plaintiff's generic § 1983, malicious prosecution, right to a fair trial, malicious abuse of process, and *Monell* claims are DISMISSED. Defendants' motion is DENIED with respect to Plaintiff's false arrest and failure to intervene claims.

**SO ORDERED.**